**UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA**

| | |
|---|---|
| **PROTECT THE PUBLIC'S TRUST,** | |
| *Plaintiff,* | |
| **v.** | **Case No. 23-cv-340-RCL** |
| **INTERNAL REVENUE SERVICE,** | |
| *Defendant.* | |

## MEMORANDUM OPINION

Plaintiff Protect the Public's Trust ("PPT") has moved the Court to assess an award of attorney's fees and costs under the Freedom of Information Act ("FOIA"), 5 U.S.C. § 552 *et seq.*, against defendant Internal Revenue Service ("IRS"). PPT filed suit after IRS thrice refused to process PPT's FOIA request and search for documents. After IRS answered PPT's Complaint and this Court ordered IRS to file a dispositive motion, IRS voluntarily changed its position and conducted a search, finding no responsive records. PPT then moved for attorney's fees and costs under FOIA's fee-shifting provision, which permits the Court to assess attorney's fees and other litigation costs against the government when the complainant has "substantially prevailed" by obtaining relief through a court order or a voluntary change in position by the agency. 5 U.S.C. § 552(a)(4)(E). The outcome of PPT's motion principally turns on whether FOIA plaintiffs can substantially prevail without obtaining responsive records. Upon consideration of the parties' briefing, the record, and the applicable law, the Court will **GRANT** PPT's motion and award PPT $17,884.42 in attorney's fees and costs.

# I.     BACKGROUND[1]

PPT sued IRS after it repeatedly refused to process PPT's FOIA request for documents relating to alleged meetings between the IRS Commissioner and high-level executives at FTX, a famously scandal-ridden and now-bankrupt cryptocurrency exchange.

The Complaint alleges that PPT submitted a FOIA request to IRS on December 1, 2022. Compl. ¶ 6, ECF No. 1.[2] IRS immediately acknowledged the request but did not meaningfully respond until two weeks later when it sent PPT an "interim response" letter declining to search for documents. Compl. ¶¶ 9–10. IRS's interim response stated that PPT's "request is overly broad in nature and we are unable to process [it] as it does not meet the requirements of the FOIA or the applicable agency regulations." Interim Letter 1, ECF No. 1-2. It further stated that IRS would close the request unless PPT revised it to "not be unreasonably burdensome on the agency." *Id.* at 2.

PPT replied to IRS's letter on January 10, 2023, accusing IRS of "provid[ing] no analysis" and failing to "identify what portions of the request [it] believe[s] are 'overly broad' or do not meet the legal requirements for a FOIA request." Pl.'s Resp. to Interim Letter, ECF No. 1-3. PPT's letter further stated that:

> On its face, your claim is contrary to law and fact. The request provides more than sufficient information for an agency employee reasonably familiar with the subject matter of the request to identify and produce the records sought with a reasonable amount of effort. To wit, the request identifies a date range: January 20, 2021, through present. It identifies a

---

[1] IRS's opposition does not contain a background section or statement of facts. Nor does it contest PPT's representation of the factual and procedural history of this case. The Court will adopt PPT's undisputed representation of this case's factual and procedural history *in toto*.

[2] PPT sought "[f]rom January 20, 2021, through the date this request is processed, records of communications and meetings – including emails, text messages, phone records and call logs, Teams or Zoom meetings information and chats, calendar invitations, and messages sent on encrypted messaging applications – conducted between the listed FTX crypto exchange executives and contacts and Commissioner Charles P. Rettig." FOIA Req. 1–2, ECF No. 1-1. The referenced list of FTX executives and contacts contained seven personal names, five email addresses, and one phone number. *Id.*

> single custodian of records: Commision[er] Charles P. Rettig. It identifies a
> subject matter: communications with a limited set of named FTX
> executives. It provides names for those FTX executives, as well as specific
> email addresses and a phone number.

*Id.* PPT requested that IRS construe the letter as an administrative appeal and respond with

"specific information about what [it] believe[s] renders [PPT's] request overly broad or fails to

conform to the requirements of FOIA or Department of Treasury regulations." *Id.*

IRS responded shortly thereafter, explaining that PPT's request was deficient because

"'communications with a limited set of named FTX executives' . . . is not a subject matter and

instead defines the types of documents" sought rather than a "subject matter . . . regarding these

communications." Disclosure Manager Email 1, ECF No. 1-4. IRS reaffirmed the refusal rationale

contained in its interim response letter and instructed PPT to reply with a "subject matter for [its]

request" or incur closure without further action by the agency. *Id.*

PPT promptly responded by accusing IRS of undertaking "an intentional effort to withhold

clearly requested and identified records in the Service's custody." Pl.'s Resp. to Disclosure

Manager Email 1, ECF No. 1-5. PPT asserted that it had merely "requested clearly identified

records in the custody of a single IRS official," and that this request was neither "complex,"

"confusing," nor "burdensome." *Id.* PPT's response also provided a detailed explanation for why

its request was of significant public interest—to expose "the level of influence between

[Commissioner] Rettig and this disgraced company [FTX] and its founder." *Id.*

On January 19, IRS sent PPT a "final response," closing its FOIA request without action

because it "was not properly submitted in accordance with IRS regulations" and because PPT had

failed to submit "the needed information" to "perfect the request." Final Resp. Letter 1, ECF

No. 1-6. IRS enclosed and incorporated its interim response letter. *Id.* at 2–4. In summary, IRS

refused three times in less than two months to comply with PPT's request and search for responsive

records. In each instance, IRS asserted the same justifications for refusing to act contained in its interim response—overly broad, overly burdensome, and inadequately stated under FOIA.

PPT filed its Complaint in this Court on February 7, 2023, challenging IRS's refusal to search for responsive records under FOIA and the Administrative Procedure Act. Compl. IRS answered PPT's Complaint on March 9, seeking dismissal "with prejudice and . . . any other relief the Court deems proper." Answer 6, ECF No. 3. On March 10, the Court ordered IRS "to produce a *Vaughn* index with a supporting dispositive motion . . . within 30 days." ECF No. 4.

IRS voluntarily conducted "a search for records responsive to Plaintiff's FOIA request" on March 27. ECF No. 10. The search did not return any responsive records. *Id.* Three days later, IRS sought and obtained an extension of time to file a dispositive motion. ECF Nos. 6, 7. In early May, before the motion deadline, IRS provided PPT with a draft declaration describing the methodology it used when conducting its search. *See* ECF No. 10. PPT did not challenge IRS's search methodology and the Court vacated the dispositive motion schedule on May 31. ECF No. 11. The Court also set a briefing schedule for PPT's motion for attorney's fees. Min. Entry (July 6, 2023).

PPT timely filed its motion for an award of attorney's fees under 5 U.S.C. § 552(a)(4)(E). Pl.'s Mot, ECF No. 15-1. IRS opposed, Def.'s Opp'n, ECF No. 16, and PPT replied, Pl.'s Reply, ECF No. 17. PPT contends that it is eligible to receive reasonable attorney's fees and costs under the statute because it "substantially prevailed" by causing IRS to voluntarily change its position and search for records. 5 U.S.C. § 552(a)(4)(E); Pl.'s Mot 13–18. PPT further claims that the facts of this case satisfy the "familiar four-factor standard" for showing entitlement to a fee award. *Morley v. CIA*, 810 F.3d 841, 842 (D.C. Cir. 2016); Pl.'s Mot. 18–22. IRS counters that FOIA plaintiffs cannot substantially prevail or show their entitlement to fees unless the agency's search

results in responsive records. Def.'s Opp'n. 5–10. IRS also challenges PPT's fee request as unreasonable. *Id.* at 10–11. PPT's motion is now ripe for review.

## II.      LEGAL STANDARD

FOIA provides that "[t]he court may assess against the United States reasonable attorney fees and other litigation costs reasonably incurred in any case . . . in which the complainant has *substantially prevailed.*" 5 U.S.C. § 552(a)(4)(E)(i) (emphasis added).

FOIA's fee-shifting provision "naturally divides the attorney-fee inquiry into two prongs, which [the D.C. Circuit] has long described as fee 'eligibility' and fee 'entitlement.'" *Brayton v. Off. of the U.S. Trade Representative*, 641 F.3d 521, 524 (D.C. Cir. 2011) (citing *Judicial Watch, Inc. v. U.S. Dep't of Commerce*, 470 F.3d 363, 368–69 (D.C. Cir. 2006)). To prevail on a fee request, a FOIA plaintiff must demonstrate *both* eligibility *and* entitlement to the award. *See McKinley v. Fed. Hous. Fin. Agency*, 739 F.3d 707, 710 (D.C. Cir. 2014); *see also Weisberg v. U.S. Dep't of Justice*, 745 F.2d 1476, 1495 (D.C. Cir. 1985) ("[E]ligibility alone is not enough. . . . [T]he complainant must [also] show that he or she is 'entitled' to an award." (citation omitted)). After establishing both prongs, the plaintiff must show that its fee calculation is reasonable. *See Covington v. District of Columbia*, 57 F.3d 1101, 1107–08 (D.C. Cir. 1995).

"The eligibility prong asks whether a plaintiff has 'substantially prevailed' and thus 'may' receive fees." *Brayton*, 641 F.3d at 524 (citing *Judicial Watch*, 470 F.3d at 368). "[A] complainant has substantially prevailed if the complainant has obtained relief through either—(I) a judicial order, or an enforceable written agreement or consent decree; or (II) a voluntary or unilateral change in position by the agency, if the complainant's claim is not insubstantial." 5 U.S.C. § 552(a)(4)(E)(ii). The entitlement prong "considers a variety of factors to determine whether the plaintiff *should* receive fees." *Brayton*, 641 F.3d at 524 (citing *Judicial Watch*, 470 F.3d at 369). Courts in this Circuit apply "the familiar four-factor standard that looks to '(1) the public benefit

derived from the case; (2) the commercial benefit to the plaintiff; (3) the nature of the plaintiff's interest in the records; and (4) the reasonableness of the agency's withholding of the requested documents.'" *Morley*, 810 F.3d at 842 (quoting *Davy v. CIA*, 550 F.3d 1155, 1159 (D.C. Cir. 2008)).

## III.   DISCUSSION

PPT must show that it "substantially prevailed" and is eligible for a fee award, is entitled to a fee award under the relevant factors, and has requested a fee amount that is reasonable. *See Brayton*, 641 F.3d at 524; *Covington*, 57 F.3d at 1107–08. IRS concedes much of PPT's motion and contests only a few discrete points. First, IRS argues that PPT is not eligible for a fee award—did not substantially prevail within the meaning of 5 U.S.C. § 552(a)(4)(E)—because it did not obtain responsive records. Def.'s Opp'n 5–7. Second, IRS argues that PPT is not entitled to a fee award because this prong effectively presupposes the existence of responsive records, *id.* at 8–9, and because the lack of responsive records indicates that the public benefit of its request was negligible, *id.* at 9–10. Third, IRS argues that PPT's requested fee amount is unreasonable because PPT did not obtain responsive records and that its requested "fees-on-fees" amount is excessive compared to its total litigation costs. *Id.* at 10–11.[3] The Court will proceed through the elements of FOIA's fee-shifting scheme and address each of these arguments in turn.

### A.  Protect the Public's Trust Substantially Prevailed and Is Eligible for a Fee Award

A plaintiff who has "substantially prevailed" is eligible to receive fees under FOIA. *Brayton*, 641 F.3d at 524 (citing *Judicial Watch*, 470 F.3d at 368). Courts in this District appear split over whether FOIA plaintiffs can substantially prevail without obtaining responsive records. *Compare, e.g.*, *PETA v. NIH*, 130 F. Supp. 3d 156, 163 (D.D.C. 2015) (finding plaintiff eligible

---

[3] "[F]ees-on-fees" refers to the fees and costs incurred litigating a motion for attorney's fees. Def.'s Opp'n 10.

for fee award despite "fact that [the agency] did not have responsive documents") *with Mobley v. U.S. Dep't of Homeland Sec.*, 908 F. Supp. 2d 42, 48 (D.D.C. 2012) (finding plaintiff ineligible for fee award because they "received no documents"). The Court will first explain why a categorical rule against fee awards for plaintiffs who did not obtain responsive records is inconsistent with the text of FOIA's fee-shifting provision, relevant precedent, and legislative history. The Court will then explain why PPT has substantially prevailed and is eligible for a fee award.

### 1. FOIA Plaintiffs Can Substantially Prevail Without Obtaining Responsive Records

Under FOIA, "a complainant has substantially prevailed if the complainant has *obtained relief* through either—(I) a judicial order, or an enforceable written agreement or consent decree; or (II) a voluntary or unilateral change in position by the agency, if the complainant's claim is not insubstantial." 5 U.S.C. § 552(a)(4)(E)(ii) (emphasis added). The critical operative phrase in this provision is "obtained relief." IRS asserts that a plaintiff cannot obtain "relief" unless they "receive from the agency responsive records." Def.'s Opp'n 6. This argument presents a question unaddressed by the Circuit—whether "relief" necessarily requires FOIA plaintiffs to obtain responsive records—that only a handful of Courts in this District have addressed. *See Gov't Accountability Project v. U.S. Dep't of Homeland Sec.* (*GAP*), No. 17-cv-2518 (CRC), 2020 WL 4931932, at *1 (D.D.C. June 2, 2020) ("[A]n issue that no court appears to have addressed . . . [is] whether a FOIA plaintiff is eligible for fees where it prevailed on summary judgment yet ultimately received no responsive records in response to its request."); *see also Mobley*, 908 F. Supp. 2d at 47 (rejecting "plaintiffs' *novel* interpretation of the term 'substantially prevailed'" (emphasis added)); *PETA*, 130 F. Supp. 3d at 162–63 (declining to follow *Mobley*'s treatment of "substantially prevailed"). Contrary to IRS's representations, the D.C. Circuit has not

yet considered, let alone answered, this question. *See* Def.'s Opp'n 6–7 (referring to "the D.C. Circuit" but citing only cases from the District Court).

After careful consideration, the Court concludes that "relief" is capacious enough to encompass a search not resulting in responsive records and rejects the categorical bar propounded by IRS.

"FOIA defines 'relief' broadly as, among other things, the 'taking of . . . action on the application [] or petition of, and beneficial to, a person[,]' 5 U.S.C. § 551(11), and in this regard, the statute appears merely to have imported the ordinary meaning of 'relief' into the agency context." *Conservation Force v. Jewell*, 160 F. Supp. 3d 194, 202 (D.D.C. 2016) (Jackson, J.); *see also Relief*, Black's Law Dictionary (11th ed. 2019) (defining "relief," in relevant part, as "[t]he redress or benefit . . . that a party asks of a court"). Of course, in a FOIA case "action on the application or petition of . . . a person" and "redress or benefit" sought from a court can encompass more than just an agency turning over records. Here, for example, IRS took "action" on PPT's "petition" by voluntarily searching for records. *See* ECF No. 10; *see also* Def.'s Opp'n 5–7 (conceding PPT's suit triggered the search for records). This conferred at least some of the "benefit" that PPT had sought from the Court—performance of a search previously refused by the agency. In other words, what PPT obtained in this case appears to squarely fit FOIA's definition of "relief."[4] This alone casts considerable doubt on the categorical bar advocated by IRS, which is compounded by IRS's failure to even discuss the statutory definition.

Indeed, § 552(a)(4)(E) does not mention "records" at all. 5 U.S.C. § 552(a)(4)(E). IRS effectively asks this Court to rewrite the statute to make "relief" incorporate a requirement

---

[4] As the Court explains *infra* III.A.2, the facts of this case satisfy FOIA's definition of "relief" such that PPT has substantially prevailed.

pertaining to "records." But if Congress wanted to cabin § 552(a)(4)(E) to cases where the plaintiff obtained responsive records, it could have easily done so. FOIA uses the terms "records" (or "record") *ninety-two* times in connection with a variety of provisions. *Id.* § 552. Congress could have added that term to § 552(a)(4)(E) or § 551(11) and spelled out the requirement advocated by IRS. But "records" is conspicuously absent from both provisions. *Id.* §§ 551(11), 552(a)(4)(E). Section 552(a)(4)(E), by contrast, is the *only* provision within all of § 552 that contains the word "relief." *Id.* § 552. Surely Congress, selectively arraying "relief" amidst a sea of "records," did not mean for these two terms to be synonymous. *See* Antonin Scalia & Bryan A. Garner, *Reading Law: The Interpretation of Legal Texts* 170 (2012) ("A word or phrase is presumed to bear the same meaning through a text; a material variation in terms suggests a variation in meaning."). And it strains credulity to suggest that notwithstanding its express definition, "relief" implicitly incorporate*s* a requirement that plaintiffs cannot substantially prevail unless they obtain responsive records. Congress used a distinctive, capacious term when it prescribed FOIA plaintiffs' path to fee eligibility, and the Court must faithfully effectuate that choice of language. IRS provides no justification whatsoever for venturing such an unwarranted deviation from the text.

Also significant is that § 552(a)(4)(E)(ii)'s introductory clause uses the phrase "obtained relief" to introduce both pathways to fee eligibility. Recall that a plaintiff has "substantially prevailed" if they have "obtained relief through *either*—(I) a judicial order, or an enforceable written agreement or consent decree; *or* (II) a voluntary or unilateral change in position by the agency, if the complainant's claim is not insubstantial." 5 U.S.C. § 552(a)(4)(E)(ii) (emphases added). That Congress prefaced these alternative pathways using the same phrase suggests that "relief" means the same thing regardless of how it was obtained. *See* Scalia & Garner, *supra* 170. IRS concedes this point and directs the Court to cases where plaintiffs were denied fee eligibility

under the first pathway because they did not obtain responsive records. *See* Def.'s Opp'n 6–7. This approach misses the mark, however, because there is persuasive authority in this District awarding fees under the first pathway to a plaintiff who did not ultimately receive responsive records; this again demonstrates the impropriety of imposing a categorical bar.

In *PETA*, the court held that an order from the D.C. Circuit directing the NIH to "search its records for a category of documents that fell outside the FOIA exemption" constituted relief even though the agency's search did not result in responsive documents. 130 F. Supp. 3d at 162–63. The Court noted that "[t]he fact that [the agency] did not have responsive documents does not negate the fact that the D.C. Circuit's ruling 'changed the legal relationship'" between plaintiff and defendant and constituted "relief on the merits." *Id.* at 163 (quoting *Davy v. CIA*, 456 F.3d 162, 165 (D.C. Cir. 2006)). Put another way, the plaintiff obtained relief within the meaning of § 552(a)(4)(E)(ii) because the bottom-line result of litigation was that the defendant-agency was required to search for records; whether responsive records actually existed was irrelevant. As explained *supra*, the scope of "relief" is the same regardless of the relevant pathway to fee eligibility. Because this Court is persuaded that *PETA* correctly held that relief short of receiving responsive records qualifies in at least some cases under § 552(a)(4)(E)(ii)(I), it follows that it may also qualify under § 552(a)(4)(E)(ii)(II).

Even the lead case cited by IRS for the proposition that FOIA plaintiff have not obtained relief unless they have received responsive records acknowledged that:

> [A]lthough the ultimate goal of any FOIA requester is, of course, to obtain records from the government, a FOIA requester must sometimes obtain interim relief that is antecedent or incident to any dispute about the production or non-production of records themselves. If an agency were to provide this sort of interim relief to a plaintiff by way of a voluntary and unilateral change in the agency's position, then it could be reasonable to conclude that, under the catalyst theory, that plaintiff has "substantially prevailed."

*Mobley*, 908 F. Supp. 2d at 47–48. Put plainly, obtaining the necessary antecedents to receiving responsive documents can constitute obtaining relief. This Court agrees. A categorical bar to fee awards to plaintiffs who did not obtain responsive records is inconsistent with the text of § 552(a)(4)(E) and is not required under any of this District's leading precedents.

Finally, legislative history, coupled with fulsome analysis of prospective incentives to prosecute FOIA claims, further confirms this Court's reading of the text. Legislative history is worth considering here if only to dispel conclusions drawn from it by other courts that conflict with the text's plain meaning. *See, e.g.*, *Mobley*, 908 F. Supp. 2d at 48–49 (grounding defendant-favoring conclusion regarding responsive records requirement in legislative history).

Some brief background is in order. The Supreme Court's 2001 decision in *Buckhannon Board and Care Home, Inc. v. West Virginia Department of Health and Human Resources* invalidated the "catalyst theory" for awarding attorney's fees under the Fair Housing Amendments Act and the Americans with Disabilities Act. 532 U.S. 598 (2001). The "catalyst theory . . . posits that a plaintiff is a prevailing party if it achieves the desired result because the lawsuit brought about a voluntary change in the defendant's conduct." *Id.* at 601 (internal quotation marks omitted). Congress became concerned that extending *Buckhannon*'s holding to FOIA would undermine it by empowering agencies to manipulate *ex ante* incentives for plaintiffs to bring FOIA litigation by shifting the costs of meritorious suits onto plaintiffs. So, Congress enacted the Open Government Act of 2007 (the "Act"), which "clarifie[d] that *Buckhannon* does not apply to FOIA cases" by adding language that today comprises the two pathways to FOIA fee eligibility. S. Rep. No. 110-59, at 4 (2007); 5 U.S.C. § 552(a)(4)(E).[5] As stated in the Senate Report:

---

[5] The Act added the following text to § 552(a)(4)(E) under a new subheading: "For purposes of this subparagraph, a complainant has substantially prevailed if the complainant has obtained relief through either—(I) a judicial order, or an enforceable written agreement or consent decree; or (II) a voluntary or unilateral change in position by the agency,

Under *Buckhannon*, it is now theoretically possible for an obstinate government agency to substantially deter many legitimate and meritorious FOIA requests. Here's how: A government agency refuses to disclose documents even though they are clearly subject to FOIA. The FOIA requestor has no choice but to undertake the time and expense of hiring an attorney to file suit to compel FOIA disclosure. Some time after the suit is filed, the government agency eventually decides to disclose the documents–thereby rendering the lawsuit moot. By doing so, the agency can cite *Buckhannon* for the proposition that, because there is no court-ordered judgment favoring the requestor, the requestor is not entitled to recover attorneys' fees. This straightforward application of the *Buckhannon* ruling effectively taxes all potential FOIA requestors. As a result, many attorneys could stop taking on FOIA clients–and many FOIA requestors could stop making even legitimate and public-minded FOIA requests–rather than pay what one might call the "*Buckhannon* tax." The "*Buckhannon* tax" is not theoretical; it is a reality to FOIA requestors and litigators.

S. Rep. No. 110-59, at 4 n.3.

This legislative history is significant because it confirms the Court's reading of the text. All of the textual features that the Court identified *supra*—§ 552(a)(4)(E)'s incorporating § 551(11)'s definition of "relief," using "relief" instead of "records," and introducing both pathways to fee eligibility via the same introductory clause—are a direct consequence of the Act. And the language that Congress introduced to § 552(a)(4)(E) closely tracks the Court's description of the "catalyst theory" in *Buckhannon*. *Compare* 5 U.S.C. § 552(a)(4)(E)(ii) (referring to "a voluntary or unilateral change in position by the agency") *with Buckhannon*, 532 U.S. at 601 (referring to "a voluntary change in the defendant's conduct"). Text and legislative history alike make clear that Congress's purpose in enacting this provision was to prevent obstinate agencies from avoiding FOIA's fee-shifting strictures by changing their position during litigation and improperly pushing costs onto plaintiffs.

---

if the complainant's claim is not insubstantial." 5 U.S.C. § 552(a)(4)(E)(ii). The Court has already analyzed this text at length.

The *Mobley* court deduced from legislative history that fees should not be awarded where an agency changed course early in litigation because "voluntary compliance very early . . . should be encouraged rather than punished." *See* 908 F. Supp. 2d at 49 (discussing views of Senator Kyl). Although *Mobley* applied this principle to deny fees to a plaintiff who did not obtain responsive records, it applies equally to plaintiffs who did. *See id.* at 48–49. This principle is exceedingly difficult to square with the general thrust of the Senate Committee Report, let alone the statute's text. *See* S. Rep. No. 110-59, at 4 n.3; 5 U.S.C. § 552(e)(4)(E). It also originates in Senator Kyl's addendum to the Senate Report, which reflects his apparent opposition, shared with the Justice Department, to reinstating the "catalyst theory" eliminated in *Buckhannon*. *See* S. Rep. No. 110-59, at 14 (restating concerns raised by "[t]he Justice Department's letter" including opposition to carving FOIA from *Buckhannon*). Congress repudiated Senator Kyl's position when it "legislatively overrule[d]" *Buckhannon* by incorporating the "catalyst theory" into the text of FOIA. *See id.*; 5 U.S.C. § 552(e)(4)(E)(ii) (incorporating the catalyst theory). There is little reason to credit it. Moreover, "a statement of a single Senator—even the bill's sponsor—is only weak evidence of congressional intent," especially when wholly unsupported by the text. *See SW General, Inc. v. NLRB*, 796 F.3d 67, 77 (D.C. Cir. 2015).

Congress's overarching intent in enacting this provision was to prevent "obstinate government agenc[ies from] substantially deter[ring] many legitimate and meritorious FOIA requests" by inducing FOIA requesters to sue, promptly or belatedly changing position, and then forcing plaintiffs to bear the costs of litigation. *See* S. Rep. No. 110-59, at 4 n.3. As reflected in the text enacted by Congress, that purpose is not limited to cases involving responsive records.

To hold otherwise would do violence to the scheme of incentives embodied in the statute's text. Categorically refusing to award fees in a case where a plaintiff caused an agency to conduct

a search that it had refused to perform but did not ultimately result in responsive records would deter legitimate FOIA plaintiffs from bringing suit. That is because there is always *ex ante* uncertainty that a search will result in responsive documents. *See Davy*, 550 F.3d at 1164 (Tatel, J., concurring) (explaining that before suing, FOIA requesters do not know "what the requested documents say or even whether they exist"). Moreover, plaintiffs and agencies do not share this uncertainty equally: agencies enjoy an information advantage and know much better than requesters whether a particular search request will produce responsive records. That is because the agency, unlike the requester, knows what records it has, what activities it has engaged in, and possesses subject matter expertise. *See Judicial Watch, Inc. v. FDA*, 449 F.3d 141, 146 ("When a party submits a FOIA request, it faces an 'asymmetrical distribution of knowledge' where the agency alone possesses, reviews, discloses, and withholds the subject matter of the request." (quoting *King v. U.S. Dep't of Justice*, 830 F.2d 210, 218 (D.C. Cir. 1987))); *Cf. Leopold v. CIA*, 177 F. Supp. 3d 479, 495 (D.D.C. 2016) (explaining that when faced with a FOIA request a responsible agency would consult with "officials knowledgeable about the subject matter to ascertain the universe of responsive records and to identify the specific offices and individuals who would possess those documents" (alteration brackets and internal citation omitted)). Agencies can easily exploit this imbalance if all it takes to avoid paying attorney's fees is to change position once the plaintiff files suit.[6]

　　If plaintiffs, as opposed to agencies, have to internalize the risk (in the form of litigation costs) that no records will turn up, then plaintiffs will become less willing to challenge agency obduracy, and agencies will become more willing to engage in obduracy because they know they

---

[6] To illustrate, it gives agencies that are sufficiently confident that a search request will not produce records the option to *ignore that request entirely* despite FOIA because if they are sued, and they are correct that there are no records, they will not have to pay fees so long as they voluntarily conduct the search before the court orders one. This empowers agencies to exploit their information advantage.

will not be challenged. *See Kwoka v. IRS*, 989 F.3d 1058, 1063 (D.C. Cir. 2021) ("[A]n allowance for fees 'remove[s] the incentive for administrative resistance to disclosure requests based not on the merits of exemption claims, but on the knowledge that many FOIA plaintiffs do not have the financial resources or economic incentives to pursue their requests through expensive litigation." (quoting *Nationwide Bldg. Maint., Inc. v. Sampson*, 559 F.2d 704, 711 (D.C. Cir. 1977))). This will affect *all* potential FOIA cases precipitated by agency refusals to search, not just cases where there are no responsive records, because the impact of not awarding fees is on the parties' prospective determinations of the risk—i.e., whether to sue despite uncertainty over whether responsive records exist. Not all plaintiffs are able or willing to assume the risk that their search request will not result in responsive records, even in the face of facially unreasonable agency resistance. *See id*. The result is that meritorious search requests that would have resulted in responsive records will not be pursued in court, contrary to Congress's clear intent when it passed the Act. *See* S. Rep. No. 110-59, at 4 n.3; *see also Founding Church of Scientology v. NSA*, 610 F.2d 824, 837 (D.C. Cir. 1979) ("[I]f, in the face of well-defined requests and positive indications of overlooked materials, an agency can so easily avoid adversary scrutiny of its search techniques, [FOIA] will inevitably become nugatory.").

Congress did not say that in voluntary position-switching cases, courts may only award fees to plaintiffs if they obtain responsive documents. Such a rule is inconsistent with the text and purpose of the Act and is further undermined by the ultimately discretionary approach to fee awards acknowledged by the D.C. Circuit. *Cf. Morley v. CIA*, 894 F.3d 389, 391–92 (D.C. Cir. 2018) (discussing judicial discretion in the context of fee entitlement rather than eligibility). Accepting a bright-line rule against fee awards in cases like this would unjustifiably hamstring the Court's ability to give effect to the text of the statute, understood in context.

## 2.   Protect the Public's Trust Substantially Prevailed

The Court will now determine whether PPT has substantially prevailed. IRS does not dispute that PPT made a detailed, reasonable request for records. *See* Def.'s Opp'n 8–9 (failing to respond to PPT's argument that "[t]he IRS's position towards Plaintiff's FOIA request . . . was false on its face" and PPT's request satisfied applicable statutory requirements and IRS regulations (quoting Pl.'s Mot. 22)). IRS was obdurate and thrice refused to undertake the requested search. *See* Interim Letter 1; Disclosure Manager Email 1; Final Resp. Letter 1. PPT then filed suit, Compl., which IRS concedes caused it to voluntarily change position and search for records, *see* Def.'s Opp'n 5–7.[7] IRS does not now defend its earlier refusal to process PPT's request. *See id.* at 8–9.

On these facts, the Court finds that PPT has substantially prevailed within the meaning of FOIA. The Court is satisfied that PPT obtained "relief" because the sequence of events that precipitated this suit—IRS's refusal to search—mirrored the result that PPT obtained as a result of IRS's voluntary change in position—IRS searched for responsive records pursuant to PPT's FOIA request. Additionally, PPT obtained everything they *could have* obtained at the time they filed suit. PPT did not know whether responsive records existed; only IRS's search revealed that

---

[7] IRS answered PPT's Complaint by requesting dismissal with prejudice. Answer 6. IRS only changed position and searched for records after the Court ordered it to file a *Vaughn* index and dispositive motion. *See* ECF Nos. 4, 10 (indicating that IRS searched only after this Court ordered it to file a dispositive motion). IRS does not deny that PPT's suit caused it to reverse course. *See* Def.'s Opp'n 5–7. Nor could it. Before litigation commenced, IRS told PPT that its request was "overly broad" and not compliant with the requirements of FOIA and applicable regulations. Interim Letter 1. Yet, as soon as it faced scrutiny in this Court, IRS fulfilled PPT's request *without* any narrowing or modification. Nothing changed between PPT's initial request and IRS's search except that PPT had filed suit, so there is no way to attribute this change to anything other than PPT's litigation efforts. That suffices to show causation under *Church of Scientology of Cal. v. Harris*, 653 F.2d 584, 587–88 (D.C. Cir. 1981). IRS suggests that *Church of Scientology* presupposes the existence of responsive records, but the question there was whether plaintiff's suit was "necessary" to and bore a "causal nexus" with the agency's action, not what constitutes "relief" when an obdurate agency changes position after previously refusing to search for records. *See id.* That decision does not stand for the restrictive rule propounded by IRS, and in any event, § 552(a)(4)(E) is not limited to cases in which plaintiffs obtained responsive records. *See supra* III.A.1.

they did not. So, PPT received the maximum extent of relief in fact available to it through suit—a satisfactory search revealing no records. This constitutes "relief" under § 552(a)(4)(E) as elucidated *supra* III.A.1. And it constitutes "relief" within the meaning of *Mobley*, because PPT's search request was "antecedent or incident to any dispute about the production or non-production of records themselves." 908 F. Supp. 2d at 47. Moreover, the two factors that counseled against finding fee eligibility in *Mobley* do not apply here.

*First*, the *Mobley* court declined to find fee eligibility in part because it determined that the plaintiff had not obtained "substantial" relief. *Id.* at 48. But PPT has obtained substantial relief here, namely, a satisfactory search for responsive records after repeated refusals to comply by IRS. Because the search was satisfactory and no such records in fact existed, there is nothing more that PPT could have obtained from IRS. The *Mobley* plaintiffs, in contrast, voluntarily dismissed their case several months before filing for attorney's fees because they had determined that the relief they really wanted—the release of records that the defendant believed were properly exempt from disclosure—was not worth the cost of continuing to litigate. *Id.* at 44. Here, PPT has received everything that IRS was able to give.

*Second*, the *Mobley* court was concerned that finding fee eligibility would unduly punish defendant-agencies and create perverse incentives for compliance with requests in the future. *Id.* at 48–49. But Congress's chief concern when it passed the Act was to prevent obstinate agencies from imposing a "*Buckhannon* tax" on FOIA requesters. *See* S. Rep. No. 110-59, at 4 n.3. IRS here obstinately refused to search for records and "engage[d] in the sort of dilatory litigation tactics that [the Act] was aimed to prevent." *Mobley*, F. Supp. 2d at 48. Although IRS did not in fact possess responsive records, IRS has not explained its previous recalcitrance or reaffirmed its earlier justifications in light of its later change in position. *See* Def.'s Opp'n 5–9. Awarding fees

here (assuming PPT also shows that it is entitled to fees) rightfully penalizes the agency for wasting the Court's time and disincentives future attempts at imposing needless litigation costs on requesters contrary to Congress's clear intent.

Above all, these facts illustrate why maintaining potential fee eligibility in cases that do not result in responsive records is important. The Court cannot countenance a rule that would allow fee eligibility when an agency is obdurate and *possesses* responsive documents but categorically disallow fee eligibility when an agency is obdurate but *does not possess* responsive documents. Fee awards are proper in both cases because the incentive for agencies should the same—comply with reasonable FOIA requests and do not burden the courts with needless litigation. *See Kwoka*, 989 F.3d at 1063.[8]

The authorities cited by IRS, none of which are binding on this Court, are inapposite or unpersuasive. Several of them are run-of-the-mill cases where the defendant produced responsive records; they are not germane to the central question presented in this case. *AquAlliance v. NOAA*, No. 17-cv-2108 (CRC), 2019 WL 2451687, at *1 (D.D.C. June 12, 2019); *Grand Canyon Tr. v. Zinke*, 311 F. Supp. 3d 381, 383 (D.D.C. 2018). The cases cited by IRS that are on point (except *Mobley*) feature sparse analysis or extend the authorities on which they rely well beyond their proper scope. *See Nat. Sec. Counselors v. CIA*, 189 F. Supp. 3d 73, 79 (D.D.C. 2016) (citing *Contreras v. U.S. Dep't of Justice*, 729 F. Supp. 2d 167, 168 n.3 (D.D.C. 2010)). The Court finds its decision in *Alford v. United States Department of Veterans Affairs* far more persuasive. 277 F. Supp. 3d 91 (2017). In *Alford*, this Court held that a plaintiff substantially prevailed even

---

[8] The Court has contemplated whether IRS's change in position after filing its Answer was a legally binding concession that altered the relationship between the parties such that had IRS identified responsive records, it would have been *required* to produce them to PPT (unless an exemption applied). *Cf. PETA*, 130 F. Supp. 3d at 163. The Court need not answer that question or even consider it further because it was not briefed by the parties, and it is obvious that obtaining the search hitherto refused by IRS constituted relief.

though all he obtained as a result of the defendant-agency's "Boolean change" in position was that it went "from wholly non-responsive, to providing a reasonably detailed explanation as to why there were no documents responsive." *Id.* at 103. The same logic applies here. PPT substantially prevailed because it induced an obstinate agency to change course and perform a satisfactory search that revealed there were no responsive documents. PPT is no less deserving of fee eligibility than the plaintiff in *Alford*.

## B.  Protect the Public's Trust Is Entitled to a Fee Award

At the entitlement stage the Court considers "(1) the public benefit derived from the case; (2) the commercial benefit to the plaintiff; (3) the nature of the plaintiff's interest in the records; and (4) the reasonableness of the agency's withholding of the requested documents." *Morley*, 810 F.3d at 842 (quoting *Davy*, 550 F.3d at 1159). IRS contests only the public benefit and reasonableness factors. The Court will analyze each factor in order and explain why PPT is entitled to a fee award.

### 1.  Public Benefit

"[T]he public-benefit factor requires an *ex ante* assessment of the potential public value of the information requested, with little or no regard to whether any documents supplied prove to advance the public interest." *Morley*, 810 F.3d at 844. In other words, "if [it is] plausible *ex ante* that a request has a decent chance of yielding a public benefit, the public-benefit analysis ends there." *Id.*

PPT claims that this factor favors awarding fees because it expected that its request would benefit the public. Pl.'s Mot. 18. IRS argues that "[t]he public did not [in fact] benefit from this FOIA case" because PPT did not obtain responsive records. Def.'s Opp'n 9. IRS does not contest PPT's *ex ante* expectation of public benefit but directs the Court instead to the alleged lack of *ex*

*post* benefit because no records were released. *See* Def.'s Opp'n 9–10. However, retrospective

benefit is basically irrelevant under *Morley*, and the Court need not consider it. *See* 810 F.3d at 844;

*but see Wren v. U.S. Dep't of Justice*, 282 F. Supp. 3d 216, 225 (D.D.C. 2017) (citing *Davy*, 550

F.3d at 1159) (ignoring *Morley*'s post-*Davy* narrowing of the public-benefit factor to *ex ante*

assessment of potential public value).[9]

The Court finds that this factor favors PPT. FTX's "sudden and unprecedented

collapse . . . sent shockwaves through the cryptocurrency industry" and was a matter of great

public concern. *See In re FTX Trading Ltd.*, 91 F.4th 148, 150 (3d Cir. 2024). In November 2022:

> FTX, a company that had been valued at $32 billion earlier in
> 2022, . . . face[d] a sudden and severe liquidity crisis as customers withdrew
> billions of dollars over the course of a few days. Since the collapse, criminal
> investigations into FTX have unearthed evidence of widespread fraud and
> the embezzlement of customers' funds.

*Id.* These momentous developments, coupled with near-contemporaneous revelations that top

figures at FTX had met with officials at the Securities and Exchange Commission, meant that there

was "at least a modest probability" that PPT's December 2022 request for information concerning

meetings between the IRS Commissioner and top figures at FTX would generate information

relevant to FTX's collapse or dealings with regulators. *See Morley*, 810 F.3d at 844–45;

Compl. ¶ 7 (noting news reports on meetings with regulators); *see also* Pl.'s Mot. 19. Accordingly,

it was "plausible *ex ante* that [PPT's] request ha[d] a decent chance of yielding a public benefit,"

which, under *Morley*, concludes the Court's analysis. *See* 810 F.3d at 844.

---

[9] *Morley* contains a dictum suggesting that a FOIA plaintiff cannot substantially prevail without causing the release
of requested documents. *See* 810 F.3d at 844. But *Morley* did not purport to elucidate the "substantially prevailed"
prong of the fee award inquiry, and this Court does not understand it to have answered a question not implicated by
the underlying facts or raised by the parties. *See id.*; *GAP*, 2020 WL 4931932, at *1 (post-*Morley* decision noting the
novelty of the substantially prevailed without responsive records question); *Morley v. CIA*, 828 F. Supp. 2d 257, 261
(D.D.C. 2011), *rev'd on other grounds*, 719 F.3d 689 (D.C. Cir. 2013) ("The CIA does not contest whether Morley is
eligible to receive attorney's fees; instead, the Agency argues that Morley has failed to show that he is *entitled* to
attorney's fees under any of the four factors.").

## 2. Commercial Benefit and Protect the Public's Trust's Interest in the Records Sought

The "commercial benefit" and "plaintiff's interest" factors are "closely related and often considered together." *Kwoka*, 989 F.3d at 1064 (quoting *Tax Analysts v. U.S. Dep't of Justice*, 965 F.2d 1092, 1095 (D.C. Cir. 1992)). "They weigh against an award where the plaintiff 'seeks disclosure for a commercial benefit or out of other personal motives.'" *PETA*, 130 F. Supp. 3d at 165 (quoting *Tax Analysts*, 965 F.2d at 1095). But they "favor non-profit organizations . . . which 'aim to ferret out and make public worthwhile, previously unknown government information—precisely the activity that FOIA's fee provision seeks to promote.'" *Elec. Priv. Info. Ctr. v. U.S. Dep't of Homeland Sec.*, 999 F. Supp. 2d 61, 69 (D.D.C. 2013) (quoting *Davy*, 550 F.3d at 1160).

The Court finds that the second and third factors favor PPT. IRS "does not dispute that Plaintiff's request was not made to obtain a commercial benefit or that it is a nonprofit public interest organization." Def.'s Opp'n 8. PPT sought records so that it could "publish information . . . on its website [and] distribute the records and expert analysis to its followers through social media channels including Twitter, Facebook, and other similar platforms." FOIA Req. 6. Additionally, PPT "has a robust network of reporters, bloggers, and media publications interested in its content and that have durable relationships with the organization." *Id.* PPT "intend[ed] to use any or all of these far-reaching media outlets to share with the public information obtained as a result of [its] request." *Id.* This sort of "journalistic or public-interest oriented" activity generally entitles FOIA plaintiffs to fees. *See Davy*, 550 F.3d at 1160–61 (quoting *Fenster v. Brown*, 616 F.2d 740, 742 n.4 (D.C. Cir. 1979)).

### 3.   Reasonableness of IRS's Position

"The fourth factor considers whether the agency's opposition to disclosure 'had a reasonable basis in law,' and whether the agency 'had not been recalcitrant in its opposition to a valid claim or otherwise engaged in obdurate behavior.'" *Davy*, 550 F.3d at 1162 (first quoting *Tax Analysts*, 965 F.2d at 1096; then quoting *LaSalle Extension Univ. v. FTC*, 627 F.2d 481, 486 (D.C. Cir. 1980)). "The question is not whether [the plaintiff] has affirmatively shown that the agency was unreasonable, but whether the *agency* has shown that it had any colorable or reasonable basis for" its behavior. *Id.* at 1163 (emphasis added).

PPT argues that the "IRS's position towards [its] FOIA request was unreasonable." Pl.'s Mot 22. IRS repeatedly resisted PPT's FOIA request before litigation and demanded narrowing and modification. *E.g.,* Interim Letter. But IRS processed the request anyway—without modification—after PPT filed suit and this Court ordered IRS to brief a dispositive motion. *See* ECF Nos. 4, 10. IRS does not attempt to justify, let alone explain, its prior recalcitrance. *See* Def.'s Opp'n. Instead, IRS argues that the Court cannot even "reach the reasonableness of withholding measure" because this factor presupposes the existence of responsive records. *Id.* at 8. IRS believes that because no such records existed, it did not "withhold" anything and there is nothing left for the Court to analyze.[10]

IRS is incorrect that this factor "explicitly presupposes a 'withholding'" of responsive records. Def.'s Opp'n 8 (quoting *GAP*, 2020 WL 4931942, at *2). This factor requires courts to evaluate whether the agency's position "had a reasonable basis in law" and whether the agency "had not been recalcitrant in its opposition to a valid claim or otherwise engaged in obdurate

---

[10] IRS suggests that this one factor is dispositive. *See* Def.'s Opp'n 9. That is incorrect under Circuit precedent. The Court retains broad discretion to balance the fee entitlement factors and award fees even if one of the factors favors the defendant. *See Morley*, 894 F.3d at 391 ("[W]hen the four factors point in different directions, the district court has very broad discretion in deciding how to balance those factors and whether to award attorney's fees.").

behavior." *Davy*, 550 F.3d at 1162 (internal citations omitted). That broad inquiry focuses on the reasonableness of IRS's conduct in responding to PPT's claims and does not strictly require the withholding of responsive records. *See, e.g.*, *PETA*, 130 F. Supp. 3d at 165–65 (focusing on the agency's justification for its inaction and not the existence or non-existence of records); *cf. Wilson v. United States*, 86 F. Supp. 3d 14, 22 (D.D.C. 2015) ("The issue in a FOIA case is not whether the [agency's] searches uncovered responsive documents, but rather whether the searches were reasonable." (quoting *Moore v. Aspin*, 916 F. Supp. 32, 35 (D.D.C. 1996))). Nor is the Court persuaded by IRS's citations to *GAP*, 2020 WL 4931932, at *2. *See* Def.'s Opp'n 8–9. That case, which concerned a challenge to the adequacy of a search voluntary performed by a defendant-agency prior to the plaintiff bringing suit, does not implicate the same prospective incentives for FOIA plaintiffs and agencies at issue here. *See GAP*, 2020 WL 4931943, at *1–2. The Court cannot divine a compelling basis for extending that decision's sparse reasoning to the present case.

It also bears repeating that IRS does not now attempt to justify its stubborn refusal to process PPT's FOIA request. *See* Def.'s Opp'n. PPT's request was stated with specificity, reasonable in scope, and contained helpful information to guide the agency. *See* FOIA Req. IRS refused to process PPT's request because it alleged it was "overly broad." Interim Letter 1. Despite requests from IRS, PPT never narrowed, modified, or clarified its request. Yet IRS was able to process it without issue after PPT filed suit. *See* ECF No. 10. The Court sees no reason to give IRS the benefit of the doubt when it has already disclaimed any need to explain these events. Nor does the Court believe it would be proper to import the responsive records requirement that it rejected under the fee eligibility prong into the fee entitlement prong. *See supra* III.A.1.[11] Again, the focus

---

[11] The *GAP* court declined to address fee eligibility because it found that the plaintiff could not, in any event, satisfy the fee entitlement prong. 2020 WL 4931942, at *1. But *GAP*'s analysis of the reasonableness factor implies that a FOIA plaintiff cannot substantially prevail without obtaining responsive records. *See id.* at *1–2. This Court disagrees

of this inquiry is the reasonableness of IRS's conduct in refusing to comply with PPT's request (i.e., withholding a search), *not* whether PPT's request resulted in responsive documents. *See Davy*, 550 F.3d at 1162. IRS has not explained or justified its conduct, so this factor favors PPT.

* * *

The public benefit, commercial benefit, personal interest, and reasonableness factors all weigh in favor of PPT.[12] Accordingly, the Court finds that PPT is entitled to an award of attorney's fees in this case.

## C.  Protect the Public's Trust's Requested Fee Amount is Reasonable

PPT requests $5,281.02 in fees and $12,603.40 in "[f]ees-on-fees." Pl.'s Time Entries, ECF No. 15-2. The Court must determine whether this request is reasonable. *See* 5 U.S.C. § 552(a)(4)(E)(i) (providing "reasonable attorney fees and other litigation costs").

IRS does not challenge PPT's lodestar rate, billing entries, time spent, or arithmetic. *See* Def.'s Opp'n 10–11.[13] Instead, IRS argues that PPT's fee request is unreasonable because PPT "did not obtain any relief" and PPT's "fees-on-fees" request constitutes an unreasonable windfall. *Id.* at 10–11. The Court will explain why these objections fail.

*First*, IRS argues that PPT's request for $5,281.02 in fees is unreasonable because "there were zero documents discovered as a result of this litigation" and PPT "did not obtain any relief." Def.'s Opp'n 10. Here IRS rehashes its argument that PPT has not substantially prevailed. But the

---

with that approach, and so long as a plaintiff *can* substantially prevail without obtaining responsive records, agencies *will* be expected to answer for the reasonableness of their actions when defending against fee award requests.

[12] The Court is confident that even if the reasonableness factor favored IRS, the Court would exercise its discretion in balancing the remaining factors to award fees to PPT. *See Morley*, 894 F.3d at 396. The first three factors are sufficiently weighty to justify an award of fees in light of the factual and procedural history of this case, as well as the pernicious incentives that not awarding fees would engender among FOIA plaintiffs and defendant-agencies. *See supra* III.A.

[13] PPT calculated a lodestar of $5,281.02 in fees and $12,603.40 in "fees-on-fees" using the *Laffey* Matrix, which has been "endorsed" by the D.C. Circuit and remains in use today. Pl.'s Time Entries; *see DL v. District of Columbia*, 924 F.3d 585, 589–90 (D.C. Cir. 2019).

Court has already rejected that argument and found that PPT obtained relief within the meaning of § 552. *See supra* III.A.2. True, PPT sued because it hoped to obtain responsive records, but PPT could not have known before litigating IRS's obdurate refusal to search that no such records existed. As already discussed, IRS effectively induced PPT to sue by refusing to process its FOIA request, thus implicating the "*Buckhannon* tax" worry that motivated Congress to pass the Act. *See* S. Rep. No. 110-59, at 4 n.3. The Court cannot give effect to the text of the statute, understood in context, if it requires PPT to internalize prospective indeterminacy over whether responsive records exist. *See supra* III.A.1. And IRS has not challenged the hours performed or rate charged by PPT's counsel. Accordingly, the Court finds that a reasonable fee award is the full amount requested by PPT, or $5,281.02.

 *Second*, IRS argues that PPT's request for $12,603.40 in "fees-on-fees" is unreasonable because it represents "70% of the total litigation costs" and is therefore a "a windfall for the attorneys." Def.'s Opp'n 11. But IRS again has not challenged the hours performed or rate charged by PPT's counsel, which PPT contends reflects the "minimum" necessary to effectively litigate a contested motion for attorney's fees. Pl.'s Reply 15. As should be clear from this Court's Opinion, PPT's request for fees raises several interesting legal questions on which Courts in this District are split. PPT has elected not to supplement its request for fees with time spent preparing its reply brief. *Id.* at 14. And PPT has already excluded several thousand dollars' worth of fees associated with work performed by its law clerk, associate, and paralegal. Pl.'s Mot. 24. Consequently, the Court finds that the amount requested by PPT "represents a reasonable, highly efficient effort to litigate novel questions of law surrounding the award of attorney's fees in this case." Pl.'s Reply 14. While the amount of "fees-on-fees" requested here represents approximately 70% of the total litigation costs—which is high—the dollar amount is significantly less than the $35,574.10

in "fees-on-fees" requested in *Urban Air Initiative, Inc. v. EPA*, and only slightly higher than the $10,000.00 in "fees-on-fees" ultimately awarded by that court. *See* 442 F. Supp. 3d 301, 327 (D.D.C. 2020).

Having surveyed case law in this District, the Court does not believe that it should reduce PPT's "fees-on-fees" award merely because its percentage share of the total litigation costs is high. *Cf., e.g.*, *Elec. Priv. Info. Ctr.*, 999 F. Supp. 2d at 77 (reducing "fees on fees" by 15% to reflect that plaintiff's fee application was only partially successful and contained several shortcomings). PPT's counsel effectively and diligently pursued this motion while simultaneously disclaiming certain fees and costs in the interest of fairness. PPT was completely successful in prosecuting its motion for fees. Accordingly, the Court finds that a reasonable "fees-on-fees" award is the full amount requested by PPT, or $12,603.40.

## IV.   CONCLUSION

For the reasons set forth above, PPT's application for attorney's fees and costs is **GRANTED**. IRS must pay PPT $17,884.42 in attorney's fees and costs.

A separate Order consistent with this Memorandum Opinion shall issue.

Date: February ⟨ 6 ⟩, 2024

Royce C. Lamberth
United States District Judge